COLMAN (BALCH v.).  See Case No. 791.
COLMAN (WILSON v.).  See Case No. 17,-798.
COLOMBO, The.  See Case No. 3,040.

---

## Case No. 3,022.

### The COLON.

[8 Ben. 512.][1]

District Court, S. D. New York.  Oct., 1876.

COLLISION IN SLIP — STARTING SCREW OF STEAMSHIP—LOOKOUT.

A canal-boat loaded with coal was lying in a slip in which a steamship lay, discharging her cargo. It became necessary to turn her around in the slip and she was cast loose for that purpose. A line was got out from the stern of the canal-boat to the pier, on which the master of the canal-boat was pulling, with his back to the steamship, when the screw of the steamship was started, and the suction pulled the canal-boat over till she was struck by the screw and so injured that she sank. It was the regular sailing day of the steamship, and the screw was put in motion before starting, as was customary, for the purpose of seeing if the machinery was in order. Before putting the machinery in motion, the officers of the steamship had examined to see if there was any vessel which might be injured by the action of the screw, but some little time had elapsed after that examination, before the screw was put in motion. When 'he master of the canal-boat found that his boat was being drawn over towards the screw, he called to the steamship to stop her screw, but there was no one on the lookout on board of her and the screw was not stopped: *Held*, that the steamship was in fault in not keeping a watch on her stern and in

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

setting her screw in motion when she did, and was liable for the damages
[Followed in The City of Macon, 20 Fed. 159.]

In admiralty.

E. D. McCarthy, for libellant.
W. R. Beebe and H. S. Bennett, for claimants.

BLATCHFORD, District Judge. The libellant, as owner of the canal-boat Charles McCaffrey, files this libel against the steamship Colon, to recover damages for the loss of said boat and her cargo of coal and her furniture, caused by her being sunk in consequence of her being struck by the screw of the steamship, in the slip between piers 41 and 42, in the North river, in the city of New York. The steamship was lying with steam up, and her bow towards the river, at the south side of pier 42. The occurrence took place on the 19th of December, 1874. The steamship was about starting on a voyage to sea and was working her screw at the wharf, to see that her machinery was in proper working order. The canal boat had been lying at the south side of pier 42, between the steamship and the bulkhead at the inner end of the slip, with her stern towards the stern of the steamship, having coal discharged from her forward end, and had been removed from her position with a view to place her rear end at the point of discharge, which would have brought her bow towards the stern of the steamship. While this movement was in progress, the canal boat, having been pushed away from pier 42 and over to near pier 41, was moved by some agency, during the revolution of the screw of the steamship, over towards the latter, so that the screw struck the bottom of the canal boat under her port side, some feet forward of the stern of the canal boat, and broke in a hole through which the water entered, so that the boat sank in the slip.

The libel alleges that the stern of the canal boat had been pushed off from pier 42 so far that it lay not more than 3 or 4 feet from pier 41, and the boat lay diagonally athwart the slip, her bow towards pier 42 and her stern towards pier 41, she being about 75 feet distant from the stern of the steamship, when the screw of the steamship began to revolve, and the suction produced thereby drew the canal boat towards the stern of the steamship; that the libellant, who was in the canal boat, seeing the danger to which she was exposed, shouted loudly to those in charge of the steamship to stop the screw; that no attention was paid to such call, and the boat was drawn up against the stern of the steamship and was struck five or six times by the screw; that the screw was then stopped, and was afterwards again started, and struck the blow which made the hole; that the occurrence took place solely through the negligence of those in charge of the steamship; and that everything was done

that could have been done by those in charge of the canal boat to prevent a collision.

The answer is put in by the Pacific Mail Steamship Company, as owners of the steamship. It avers, that, for many years, one of the company's steamers had left pier 42 at noon on Saturday of each alternate week; that this fact was well known to the public and to the libellant; that the day of this occurrence was one of the regularly appointed days for the sailing of the company's steamers; that, on that day, at noon and for about an hour previous thereto, it was apparent to every one in the vicinity that the Colon was about to depart; that, about noon, and just previous to the departure of the Colon, her officers, in accordance with their duty and custom, started her screw, to ascertain if her machinery was in working order; that, previously thereto, the officers of the Colon had examined all the boats in her vicinity, to ascertain whether her screw could be made to revolve with safety to herself and to other craft in her vicinity; that, on such examination, all the boats in the vicinity of the Colon, including that of the libellant, were found to be, and were, lying quietly, and were fastened to the docks, and there was then no craft within fifty feet of the Colon; that, thereupon and thereafter, steam was applied to the screw of the Colon, which caused it to revolve, and there was thereby created a succession of currents which flowed directly aft from the stern of the Colon and towards the dock where the canal boat lay; that the libellant, perceiving said currents, and desiring to wind his boat around, and for the purpose of saving himself time and trouble, and to avail himself of the aid and force of said currents, unfastened the stem of his boat from pier 42, and pushed her into the current, by which her stern was driven away from the Colon towards pier 41 and nearly into the position which he desired, and he had attached her stern to pier 41 by a rope; that then, finding there was not room enough for him to turn, he directed his assistant to unfasten the bow, which was done, and the bow was hauled toward the Colon by such assistant, while the libellant unloosed the rope which attached the stern to pier 41, and pushed the stern also towards the Colon, in order to get into a larger space to turn the boat around; that the bow of the boat was thus brought within a few feet of, and right aft of, the stern of the Colon, from which the currents created by the revolving screw were flowing, by which the bow of the boat was swept back towards the bulkhead, and the stern was thrown around against the other side of the revolving screw, by the flanges of which it was struck; that the injury was caused solely through the negligence of the libellant, and without any fault or negligence on the part of the officers of the Colon; that the screw had been in motion fully five minutes before the libellant had unfastened his boat or made any attempt to wind it; that the whole object of the libellant in unfastening and attempting to wind his boat at that time was to avail himself of the assistance afforded by the currents created by the revolutions of said screw; that no suction was produced in the water by the revolutions of the screw, and the canal boat was not drawn towards the stern of the Colon by any suction, but the currents created by the revolutions of the screw drove all floating craft directly aft and away from the Colon, instead of drawing them to her; and that the canal boat came against the side of the screw by being pushed there by the libellant, while he was in the act of shifting his boat.

One of the principal issues raised by the pleadings is, as to where the canal boat was when the screw of the Colon was put in motion. The libel alleges, that, at that time, the canal boat had been moved from her original position at pier 42 and was lying diagonally in the slip, with her stern only a few feet distant from pier 41 and her bow towards pier 42, thus presenting her port side towards the Colon. The answer avers that the canal-boat was not moved from pier 42 until after the screw of the Colon was put in motion. The testimony is very clear the canal-boat had been moved away from pier 42 before the screw of the Colon was set in motion, and that, when the screw was started, the canal-boat was in the position set forth in the libel, and was in the course of her transit from her original position at pier 42 with her stern towards the Colon, to a position, at pier 42, in which her bow should be towards the Colon. The reason why it was necessary that the canal-boat should be brought down nearer to the Colon, and have her stern pushed over to the vicinity of pier 41, in order to turn her bow, was that the landward end of the slip was filled up near to the bulkhead, by boats lying parallel with each other at pier 41, while the space between the screw of the Colon and pier 41, in a line at a right angle to pier 41, was open, and afforded room for the stern of the canal-boat to approach pier 41 near enough to enable her bow to swing clear of pier 42 while being drawn towards the stern of the Colon. At some time during the transit of the canal-boat, and, as I think, from the evidence, at the time the screw of the Colon was put in motion, there was a line out from the stern of the canal-boat to pier 41, on which line the libellant, who was on his boat, was pulling, his back being towards the Colon. The weight of the testimony is, that the stern of the canal-boat was down the slip so far as to be below a line at a right angle from the screw of the Colon to pier 41, and that her stern was thus within the range of the sucking or drawing power of the screw, and was drawn towards the screw by the working of the screw. In this state of things, it is contended for the Colon, that the libellant must have been

guilty of negligence, in failing to keep his boat away from the screw by holding on to the line which extended from his boat to pier 41, or else that he designedly pushed his boat towards the screw. The libellant testifies that the suction was such that he could not hold the boat by the line, and all the circumstances go to show that he would have held her if he could, after he saw the effect of the suction; and that he intentionally pushed her towards the screw is not to be credited. But, it is quite apparent, that if, after the screw began to work, and while it continued working, some proper person had been stationed on the stern of the Colon, the canal-boat and her movements would have been under observation from the Colon, and the screw could have been stopped and the collision avoided. When the libellant found that his boat was being drawn towards the screw, he cried out loudly to the Colon to stop the working of the screw, but there was no one on the lookout to respond. Officers of the Colon testify that, before the screw was set in motion, they took the precaution to look from the stern and port side of the Colon into the slip, to see whether there was any boat in a position to be injured by the working of the screw, and saw none. Some little time, however, elapsed, after that, before the screw was started; and it was not enough for the officers merely to observe the state of things before starting the screw. A watch should have been kept from the stern of the Colon all the time the screw was in motion. Moreover, a careful observation at the moment the screw was put in motion, would have shown that the canal-boat was in transit and was in a position of danger, if the screw should be started. All this shows negligence on the part of the Colon, and I see no contributory negligence on the part of the canal-boat. There must be a decree for the libellant for the damages sustained by him by the sinking of the canal-boat and her furniture, of which he was the owner, with a reference to a commissioner to ascertain such damages. The libel contains no allegations sufficient to authorize a recovery by the libellant for any loss of or damage to the cargo of coal. He is not alleged to have owned it or to have been carrying it on freight.